UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MATTHEW C. HARTLEY, | : | Case No. 3:12-cv-161 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and therefore unentitled to supplemental security income ("SSI") and disability insurance benefits ("DIB"). (*See* Administrative Transcript ("Tr.") (Tr. 19-30) (ALJ's decision)).

**I.**

On June 20, 2008, Plaintiff filed applications for DIB and SSI. (Tr. 150-160). Plaintiff alleged disability since September 30, 2006 due to mental health impairments, including anger outbursts, bipolar disorder, depressive disorder, and anxiety disorder. (Tr. 137-144, 165, 176-183, 201-208). The Social Security Administration denied Plaintiff's claims initially and upon reconsideration. (Tr. 72-73, 82-84, 85-87). Plaintiff then timely requested a hearing before an ALJ. (Tr. 90-91). A hearing was held on June

1

23, 2010, at which Plaintiff and a vocational expert testified, and the ALJ issued an unfavorable decision on July 13, 2010. (Tr. 16-35). Plaintiff filed a request for review with the Appeals Council which was denied. (Tr. 14-15). Subsequently, Plaintiff timely filed an appeal with this Court.

At the time of the hearing, Plaintiff was 33 years old. (Tr. 39). He lived in a home with his girlfriend and had children, but his parents had custody of them because neither he nor the children's mother was able to adequately care for them. (Tr. 353). Plaintiff depended on his parents emotionally and financially. (*Id.*) He also relied on his mother to dispense his medications for him. (TR 357). Before his alleged onset date, he had worked several jobs as a car stereo installer, a shipping and receiving clerk, a shelf stocker, and a worker in a grocery store. (TR 40-41, 57). Plaintiff either quit or was fired from most of his past jobs because of issues related to his anger problems and dislike of authority figures. (TR 41, 47, 55-56).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.

2. The claimant has not engaged in substantial gainful activity since September 30, 2006, the alleged disability onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b), and 416.971 *et seq*.).

3. The claimant has the following impairments, which are severe for Social Security purposes: mood disorder NOS and personality disorder NOS (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416,920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds the claimant lacks the residual functional capacity to: (1) have contact with the public; (2) have greater than occasional contact with supervisors (with no over-the-shoulder job supervision); (3) have greater than occasional contact with co-workers (a restriction which includes no job requiring him to work as a part of a team on work projects with co-workers); or (4) do other than low stress work (i.e. no job involving fixed production quotas or otherwise involving above average pressure for production, work that is other than routine in nature, or work that is hazardous).

6. The evidence is insufficient to determine if the claimant has past relevant work.

7. The claimant was born on January 2, 1977, which classifies him as a younger individual (20 CFR 404.1563 and 416.963).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

(Tr. 22-38).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations, and was therefore not entitled to SSI or DIB. (Tr. 30).

On appeal, Plaintiff argues that: (1) The ALJ failed to properly evaluate Plaintiff's severe mental health impairments causing the decision to be unsupported by substantial evidence; and (2) The ALJ's determination of Plaintiff's credibility was not supported by evidence of record because it was based on impermissible intuitive notions. The Court will address each error in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

The record reflects that:

**A. Medical Evidence**

Consultative examiner George O. Schulz, Ph.D., evaluated Plaintiff in October 2005. (Tr. 224-28). Dr. Schulz reported that Plaintiff had never been hospitalized for a psychiatric disorder or depression, and Plaintiff denied any past problems with bosses or coworkers. (Tr. 224-25). Dr. Schulz reported that Plaintiff (1) took care of his personal hygiene; (2) played with his children daily and contacted his parents daily; (3) contacted friends once or twice a week; (4) did cleaning, laundry, and cooking; and (5) went shopping. (Tr. 227). He opined that Plaintiff had minimal impairment in his ability to: relate to others; understand, remember, and follow instructions; and maintain attention and concentration and perform simple repetitive tasks with adequate pace and perseverance. (Tr. 227-28). He also opined that Plaintiff had mild to moderate impairment in his mental ability to withstand the stress and pressures associated with day-to-day work activity. (Tr. 228).

5

Plaintiff's primary care physician, Joel D. Macy, M.D., treated Plaintiff eleven times between July 2007 through August 2008. (Tr. 240-56, 388). Dr. Macy reported that Plaintiff's depression was well-controlled in July 2007, but noted in September 2007 that it had started to worsen. (Tr. 250, 256). Dr. Macy indicated on October 30, 2007, that Plaintiff had at most moderate limitations in the listed mental abilities, and that Plaintiff was not significantly limited with respect to most of the listed abilities. (Tr. 298). Dr. Macy believed that Plaintiff was employable. (Tr. 299).

Dr. Schulz examined Plaintiff again on October 31, 2007. (Tr. 231-36). Plaintiff denied having any past issues with bosses or co-workers. (Tr. 232). He was able to feed, bathe, and dress himself, and take care of his personal hygiene. (Tr. 232). He went to his parents' house and helped watch his kids every day, and socialized with friends once a month. (Tr. 232-33). Plaintiff did "most of the domestic chores in the home," including cooking and grocery shopping. (Tr. 233). Plaintiff dress was appropriate, and he did not present any hallucinatory, delusional, or psychotic symptoms. (Tr. 233). Dr. Schulz opined that Plaintiff was minimally impaired in his ability to: relate to others; understand, remember, and follow instructions; and maintain attention and concentration and perform simple repetitive tasks with adequate pace and perseverance. (Tr. 235-36). He opined that Plaintiff was mildly impaired in his ability to withstand the stress and pressures associated with day-to-day work activity. (Tr. 236).

In a psychological assessment dated December 4, 2007, social worker Mary M. Dailey noted that Dr. Macy had referred Plaintiff for counseling. (Tr. 360). Ms. Dailey

reported that Plaintiff had been "extremely upset" since breaking up with his girlfriend one month prior. (Tr. 360). Plaintiff reported that he had recently signed guardianship of his children over to his parents, but that he still maintained daily contact with them and helped care for them. (Tr. 361). Ms. Dailey recommended that Plaintiff undergo a psychiatric consultation with Dr. Yiu-Chung Chan to evaluate his medication regime and that he begin outpatient individual counseling. (Tr. 363).

Plaintiff saw Ms. Dailey for individual counseling sessions on an approximately biweekly basis from December 4, 2007 through August 15, 2008. (Tr. 323-31, 375-78). At each session, Plaintiff was dressed neatly and appropriately with good attention to grooming, and exhibited no delusions, hallucinations, or psychosis. (Tr. 323-31, 375-78). Plaintiff's mood was generally depressed and his affect was usually flat or blunted. (Tr. 323-31, 375-78). He primarily complained about ongoing depression, rage, impulsiveness, and issues relating to his recent break-up with his former girlfriend. (Tr. 323-31, 375-78).

Dr. Chan first saw Plaintiff for medication management on January 21, 2008, and continued to see Dr. Chan approximately every other month through the ALJ hearing date. (Tr. 280, 609). At each appointment, Dr. Chan reported that Plaintiff (1) was dressed and groomed appropriately; (2) was oriented and focused; (3) had normal speech; (4) had an intact memory and coherent or circumstantial thought process; and (5) had either good or limited judgment or insight. (Tr. 280, 317-20). Dr. Chan's assessments of

7

Plaintiff's insight and judgment varied. On two instances, Dr. Chan noted that Plaintiff had reported hallucinations. (Tr. 317, 539).

During the final two examinations with Dr. Macy contained in the record in June and August, 2008, Dr. Macy reported that Plaintiff's depressive disorder, anxiety, and bipolar disorder were stable. (Tr. 240, 388).

Vicki Casterline, Ph.D., completed a Mental RFC Assessment form on July 24, 2008. (Tr. 333-36). Dr. Casterline recounted Dr. Chan's and Ms. Dailey's treatment notes, and concluded that the medical evidence of record suggested greater functional ability than Plaintiff had alleged. (Tr. 335). She noted that Plaintiff's depression might interfere with detailed instructions, but opined that Plaintiff could perform multi-step tasks "if given a bit of time." (Tr. 335-36). Dr. Casterline found that Plaintiff would likely perform best in a setting that entailed minimal interaction, but that Plaintiff could nevertheless "relate adequately on a superficial basis" and adapt to a normal work setting. (Tr. 336). She found that Plaintiff had a moderate restriction of activities of daily living; moderate difficulty in maintaining social functioning; mild difficulty in maintaining concentration, persistence, or pace; and no episodes of extended decompensation. (Tr. 347).

Ms. Dailey completed a "Daily Activities Questionnaire" on September 5, 2008. (Tr. 356-57). She reported that Plaintiff tried to visit his family daily, but did not socialize with friends. (Tr. 356). She noted that Plaintiff had self-reported problems getting along with co-workers or supervisors at prior jobs. (Tr. 356). She noted that

8

Plaintiff had applied for "numerous jobs" but was unemployed. (Tr. 356). Ms. Dailey opined that Plaintiff's irritability and poor stress management would interfere with work activities. (Tr. 356). Ms. Dailey reported that Plaintiff was able to prepare TV dinners, pick up after himself, do laundry, and attend to chores. (Tr. 357). She reported that Plaintiff was not cutting his hair or trimming his beard, but that he was clean and dressed appropriately. (Tr. 357). She indicated that Plaintiff depended upon his family and roommate to shop for him, but that Plaintiff could drive his own vehicle. (Tr. 357).

Plaintiff completed an adult function report on September 8, 2008. (Tr. 201-08). In relevant part, Plaintiff reported that he lived with friends, mowed the yard, did laundry, vacuumed, shopped for food and medication, and watched TV. (Tr. 201-05). Plaintiff reported that he "[did not] care what [he] look[ed] like." (Tr. 203).

Dr. Chan completed a mental status questionnaire on September 8, 2008. (Tr. 353-55). Regarding the severity of Plaintiff's anxiety, Dr. Chan noted that Plaintiff did not like to be around people and had difficulty concentrating. (Tr. 353). He noted that Plaintiff was sometimes paranoid about what others thought about him, but was well oriented. (Tr. 353). He noted that Plaintiff's insight and judgment were fair and that Plaintiff had some verbal aggression. (Tr. 353). Dr. Chan opined that Plaintiff would have difficulty and be annoyed if placed around others in a work setting but would do okay with simple tasks. (Tr. 354).

On October 17, 2008, John Waddell, Ph.D., indicated that he had reviewed the evidence in Plaintiff's file, and affirmed Dr. Casterline's July 2008 assessment. (Tr.

9

394).  According to a Crisis Assessment form dated October 8, 2009, Plaintiff presented suicidal ideations following a September 2009 arrest for assaulting an officer.  (Tr. 554).  Plaintiff reported experiencing auditory hallucinations.  (Tr. 557).

Dr. Chan completed a mental RFC assessment form in May or June, 2010, identifying several moderate and marked limitations.  (Tr. 608-09).  Dr. Chan did not identify any extreme limitations.  (Tr. 608).  In support of his assessment, Dr. Chan noted that Plaintiff had a history of depression and anxiety with anger outbursts, impulsivity, low concentration, and low energy.  (Tr. 609).

Dr. Chan also completed a separate mental RFC questionnaire form on June 10, 2010. (Tr. 597-99).  Dr. Chan found that Plaintiff had numerous limitations, primarily extreme, in his ability to interact socially, sustain concentration and persistence, and adapt.  (Tr. 597-99).  He opined that Plaintiff's condition would likely deteriorate under the stress of a job.  (Tr. 599).  He opined that Plaintiff's impulsivity, anger, and agitation interfered with his ability to manage in the work force.  (Tr. 599).

### B. Plaintiff's Testimony

At the ALJ hearing on June 23, 2010, Plaintiff testified that he lived with his significant other.  (Tr. 39-40).  He stated that his medication was not wholly effective, and that he was hearing voices.  (Tr. 44-45).  Plaintiff asserted that he had been fired for getting angry and "mouth[ing] off" at work a couple of times.  (Tr. 46-47).  Plaintiff testified that he spent 95 percent of his time sleeping in bed and 5 percent visiting his kids.  (Tr. 48-49).  In response to his attorney's questions, Plaintiff reported hearing

voices and having visual hallucinations about hurting other people. (Tr. 51-52). He indicated that he had been diagnosed with bipolar disorder, and that he was always anxious about other people. (Tr. 53-54). He reported that, while he was working, he got along with coworkers "[s]ome, not a lot." (Tr. 55).

### C. Vocational Expert Testimony

According to the vocational expert (VE) testimony, significant jobs exist in the economy that Mr. Hartley could perform within his judicially-determined RFC. (Tr. 28-29). The VE also testified that any of the limitations posed in the opinions of Dr. Macy and Dr. Chan would not allow Mr. Hartley to participate in substantial gainful activity in the economy. (Tr. 65-68).

### B.

First, Plaintiff argues that the ALJ failed to properly evaluate his severe mental health impairments, causing the decision to be unsupported by substantial evidence.

### A. Evaluation of Evidence

Plaintiff alleges that the ALJ committed reversible error by failing to discuss one of the functional capacity assessment forms that Dr. Chan completed and the Daily Activities Questionnaire that Ms. Dailey completed. (Doc. 8 at 6-8). However, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Morgan v. Comm'r of Soc. Sec.*, 2011 WL 3714781 at *9 (S.D. Ohio July 20, 2011) (quoting *Simons v. Comm'r of Soc. Sec.*, 114 F. App'x 727, 733 (6th Cir. 2004)); *see also Loral Defense Sys.-Akron v.*

*N.L.R.B*., 200 F.3d 436, 453 (6th Cir. 1999). Accordingly, the fact that the ALJ did not explicitly discuss the earliest of Dr. Chan's three functional capacity assessments, nor Ms. Dailey's questionnaire, does not indicate that the ALJ did not examine or consider those opinions. Consequently, the ALJ did not violate his obligations to evaluate every medical opinion, provide "good reasons" for the weight assigned to a treating physician's opinion, and consider evidence from other sources. Neither 20 C.F.R. § 404.1527(d) nor Social Security Ruling ("SSR") 06-03p require the ALJ to explicitly discuss each piece of evidence from every source in order to meet the obligations that they impose.

Furthermore, the ALJ indirectly addressed Dr. Chan's 2008 assessment by discussing Dr. Chan's more current 2010 assessments. An ALJ's failure to explicitly evaluate a treating physician's opinion is harmless error if the ALJ indirectly addressed the opinion through his analysis of other evidence. *See Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 547 (6th Cir. 2004). Given that the ALJ discussed Dr. Chan's two most current assessments, it is reasonable that the ALJ omitted discussion of a third, older assessment from the same doctor. (Tr. 26-27).

Consequently, the ALJ committed no reversible error by failing to explicitly discuss Dr. Chan's or Ms. Dailey's 2008 assessments.

**B. Treating Source Rule**

The Sixth Circuit has recognized that treating physicians' opinions are "only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Sec'y of Health and Human Servs*., 25 F.3d 284,

287 (6th Cir. 1994). However, the ALJ must give "good reasons" for the weight assigned to a treating source's opinion. 20 C.F.R. § 404.1527(d)(2); *Wilson*, 378 F.3d at 544. These reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p at *5; *Wilson*, 378 F.3d at 544. "An ALJ may decline to afford treating physicians even substantial weight, as long as he minimally articulates his reasons." *Vickers v. Comm'r of Soc. Sec.*, 2010 WL 3785373 at *6 (S.D. Ohio Apr. 12, 2010).

The regulations provide several factors for the ALJ to consider in evaluating a medical opinion from a treating source, including the length, frequency, nature, and extent of the treatment relationship; the extent to which the medical source presents relevant evidence to support the opinion; the consistency of the opinion with the record as a whole; whether the opinion is within the specialty of the medical source; and other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6). The Sixth Circuit generally defers to an ALJ's decision to give more weight to the opinion of one physician than another where there is evidence that the rejected opinion is inconsistent with other medical evidence in the record. *Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008).

Disagreement with how an ALJ decided to weigh divergent medical opinions is not a valid basis for setting aside the ALJ's decision. *Mullins v. Sec'y of Health and Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987); *see also Bass v. McMahon*, 499 F.3d

506, 509 (6th Cir. 2007)(if substantial evidence supports ALJ's decision, reversal is not warranted even if substantial evidence could support the opposite conclusion).

### 1. Dr. Chan

Here, the ALJ provided several good reasons for the weight he gave to Dr. Chan's opinions, including his discounting of Dr. Chan's 2010 opinions. (Tr. 26-27). Regarding supportability, the ALJ noted that Dr. Chan gave no explanation for rapidly changing his assessment of Plaintiff's limitations from a mixture of moderate and marked limitations in the first 2010 assessment to almost all extreme limitations in the second 2010 assessment. (Tr. 26-27, 597-99, 608-09); 20 C.F.R. § 404.1527(d)(3). An ALJ is not bound by the disability opinion physician who provides conflicting opinions throughout the relevant time period. *Hardaway v. Sec'y of Health and Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987); *see also Stanley v. Sec'y of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) (no error in discounting physician's opinion when physician provided no evidence to support a sudden change in his assessment). The ALJ also noted that Dr. Chan's own treatment notes did not reflect such serious symptoms and did not indicate that Plaintiff required any intensive care or hospitalization, and that his mental status examinations were mostly normal and never critical. (Tr. 27, 317-22, 365, 525-42).

The ALJ next noted that Dr. Chan's opinions were inconsistent with the record as a whole. (Tr. 27); 20 C.F.R. § 404.1527(d)(4). First, the ALJ explained that Dr. Chan's opinions were inconsistent with Plaintiff's daily activities and social functioning, as Plaintiff (1) drove as needed and lived with other people; (2) saw his children daily and

helped care for them; (3) did essentially all of the household chores; and (4) took care of his own bathing and dressing. (Tr. 24-25, 27, 201-05, 227, 232-33, 357). Second, the ALJ noted that there was no history of serious mental disorder documented in the record. (Tr. 27). Third, the ALJ noted that Dr. Schulz's consultative exams in late 2005 and late 2007 were essentially normal. (Tr. 27, 224-28, 231-36). Fourth, the ALJ noted that Dr. Macy indicated in late 2007 that Plaintiff had no more than moderate restrictions in mental health factors and was employable. (Tr. 27, 298-99).

Finally, regarding "other factors," the ALJ noted that Plaintiff only alleged increased symptoms after Dr. Macy's aforementioned evaluation in late 2007. (Tr. 27); 20 C.F.R. § 404.1527(d)(6). In sum, the ALJ provided numerous reasons for discounting Dr. Chan's opinions that were directly related to the "supportability," "consistency," and "other factors" prongs of 20 C.F.R. § 404.1527(d). This articulation was "sufficiently specific to make clear to any subsequent reviewers" the reasons behind the weight that the ALJ assigned to Dr. Chan's opinion. SSR 96-2p at *5; *Wilson*, 378 F.3d at 544. Accordingly, the ALJ complied with the treating source rule, and his assessment of Dr. Chan's opinion is entitled to deference. 20 C.F.R. § 404.1527(d)(2); *Vickers*, 2010 WL 3785373 at *6; *Cox*, 295 F. App'x at 35.

### 2. Dr. Macy

Plaintiff next argues that the ALJ failed to give "discernible weight" to Dr. Macy's October 2007 assessment. (Doc. 8 at 13). However, as Plaintiff acknowledges, the ALJ cited Dr. Macy's assessment multiple times in support of his decision, and specifically

noted that it was "quite compatible" with Dr. Schulz's 2007 assessment that was accorded great weight. (Tr. 27-28). Additionally, Dr. Macy's assessment that Plaintiff had some moderate limitation in his ability to sustain concentration and persistence and in his ability to interact socially is consistent with the ALJ's assessment of Plaintiff's mental limitations at Step Three, and with the limitations on social interaction and production pace that the ALJ incorporated into his RFC assessment. (Tr. 25-26, 298-99). It is sufficiently clear from the record that the ALJ assigned significant weight to Dr. Macy's 2007 assessment. SSR 96-2p at *5; *Wilson*, 378 F.3d at 544.

### 3. Dr. Schulz

Plaintiff argues that the ALJ erred by assigning greater weight to Dr. Schulz's evaluations than to Dr. Chan's or Ms. Dailey's opinions. (Doc. 8 at 13-17). This disagreement as to the weight given to medical evidence is not a valid basis for setting aside the ALJ's decision. *Mullins*, 836 F.2d at 984.

The ALJ properly evaluated Dr. Schulz's opinion under the factors in 20 C.F.R. § 404.1527(d), specifically citing supportability and consistency to justify his assessment. (Tr. 27). The ALJ noted that Dr. Schulz's assessment was consistent with Dr. Macy's as well as with Plaintiff's daily activities, social functioning, and cognitive functioning. (Tr. 27). The ALJ properly identified the timing of Plaintiff's allegations of increased symptoms as another factor justifying giving greater weight to Dr. Schulz's report over the later reports from Dr. Chan and Ms. Dailey. 20 C.F.R. § 404.1527(d). Even if Plaintiff's proffered reasons might justify giving Dr. Chan's or Ms. Dailey's opinions

greater weight than Dr. Schulz's, Plaintiff's disagreement with the weight the ALJ assigned to contrary medical opinions is not a valid basis for reversing the ALJ's decision. *Mullins*, 836 F.2d at 984. The ALJ provided good reasons for the weight he assigned to Dr. Schulz's opinion, and the ALJ's decision is entitled to deference.

### 4. Dr. Casterline

Finally, Plaintiff contends that the ALJ erred by crediting Dr. Casterline's opinion over the opinions of Dr. Chan or Ms. Dailey. (Doc. 8 at 17-18). As the regulations recognize, state agency consultants such as Dr. Casterline are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i). As discussed, Plaintiff's disagreement with the ALJ's weighing of contrary opinions is not a valid basis for setting aside the ALJ's decision, and the Sixth Circuit generally defers to an ALJ's decision to credit the opinion of one physician over another where the rejected opinion is inconsistent with other medical evidence in the record. *Mullins*, 836 F.2d at 984; Cox, 295 F. App'x at 35.

The ALJ gave "[g]reater weight" to Dr. Casterline's opinion than to Dr. Chan's because her opinion was supported by significant findings in the record and consistent with Plaintiff's actual history. (Tr. 27). Dr. Casterline supported her opinion by referencing Dr. Chan's and Ms. Dailey's own treatment notes. (Tr. 335); 20 C.F.R. § 404.1527(d)(3). Furthermore, Dr. Casterline's assessment was consistent with Dr. Schulz's two evaluations and Dr. Macy's assessment, and was later affirmed by Dr. Waddell. (Tr. 224-228, 231-36, 298-99, 335-36, 394); 20 C.F.R. § 404.1527(d)(4).

17

The ALJ provided good reasons for the weight he assigned to Dr. Casterline's opinion, and the ALJ's decision is entitled to deference.

## C.

Secondly, Plaintiff argues that the ALJ's determination of Plaintiff's credibility was not supported by evidence of record because it was based on impermissible intuitive notions. In assessing a claimant's credibility, the regulations provide that an ALJ will consider a claimant's statements about the intensity, persistence, and limiting effects of his symptoms in relation to the objective medical evidence and other evidence, including the claimant's history, the signs and laboratory findings, and statements from medical sources about how the claimant's symptoms affect the claimant. 20 C.F.R. § 404.1529(c)(4); SSR 96-7p. The Sixth Circuit accords great deference to an ALJ's credibility assessment, particularly because the ALJ has the opportunity to observe the demeanor of a witness while testifying. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). It is not the province of reviewing courts to decide questions of credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th.Cir. 1997).

The ALJ provided many reasons to justify his finding that Plaintiff was not fully credible. (Tr. 28). First, the ALJ noted that although the instant application for benefits was Plaintiff's fifth, Plaintiff only first alleged worsening mental health symptoms after Dr. Macy opined that he could work in a mental capacity assessment. (Tr. 28). Second, the ALJ noted that Plaintiff's testimony that he had difficulty getting along with others at work directly contradicted his statements to Dr. Schulz. (Tr. 28, 46-47, 225, 232). Third,

18

the ALJ noted that Plaintiff was well-groomed and "very neatly dressed" at the hearing, despite asserting to the state agency that he did not care how he looked. (Tr. 28, 203). Fourth, the ALJ noted that Plaintiff never alleged problems with hallucinations prior to his current application, and that there was no supporting diagnosis of any psychotic disorder or objective evidence of Plaintiff's hallucinations. (Tr. 28). Fifth, the ALJ noted that despite Plaintiff's allegation that he spent "95%" of his time in bed, Plaintiff also reported daily visits with his children, and Plaintiff seemed alert and awake at the hearing. (Tr. 28, 48-49, 227, 232, 360). Sixth, the ALJ noted that Plaintiff's daily activities contradicted his allegations of limitations. (Tr. 28).

Plaintiff first argues that it was improper for the ALJ to imply that Dr. Macy's mental capacity assessment may have motivated him to report increased mental symptoms, and that his four prior applications for disability benefits were irrelevant. (Doc. 8 at 19). However, the record in the instant case supports the ALJ's contention because Plaintiff did not report symptoms justifying a referral to mental health services until shortly after Dr. Macy's October 2007 assessment. (*See* Tr. 28, 360). The ALJ's observation regarding the timing of Plaintiff's allegations of increased symptoms is grounded in the medical evidence of record.

Plaintiff also argues that it was improper for the ALJ to question his claimed hallucinations in light of the fact that Dr. Chan documented his reports of hallucinations on mental status exams. (Doc. 8 at 19-20). However, an ALJ may properly discount even a treating physician's opinion when that opinion is based on a claimant's subjective

19

complaints rather than objective medical evidence. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009); *McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995); *Hicks v. Comm'r of Soc. Sec.*, 2011 WL 1114312 at *13 (S.D. Ohio Feb. 2, 2011). Dr. Chan's notes appear to simply document Plaintiff's allegations of hallucinations.

Aside from the reasons that Plaintiff challenges, the ALJ still directly identified four inconsistencies between Plaintiff's allegations of disabling limitations, his prior statements, and his behavior. In light of the substantial deference to which the ALJ's credibility assessment is entitled, those reasons are more than sufficient to provide a basis for the ALJ's assessment.

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and is affirmed.

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner, that Matthew C. Hartley was not entitled to disability insurance benefits and supplemental security income, is found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case is **CLOSED**.

Date: 4/2/13                                                                 *s/ Timothy S. Black*
                                                                             Timothy S. Black
                                                                             United States District Judge